# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

JOHN LEE BURROUGHS and )
ROSE BURROUGHS, )
                                          )
      Plaintiff, )
                                          )
vs. )    Case No. 4:07CV1944MLM
                                          )
MACKIE MOVING SYSTEMS )
CORPORATION, )
                                          )
      Defendant. )

## MEMORANDUM OPINION

Before the court is the Motion in Limine to Partially Exclude Testimony of William Hampton filed by Defendant Mackie Moving Systems ("Defendant" or "Mackie"). Doc. 77. Plaintiffs John Lee Burroughs and Rose Burroughs ("Plaintiffs") have filed a Response. Doc. 84. Defendant has filed a Reply. Doc. 88.

## BACKGROUND

This action arises out of personal injuries sustained by Plaintiff John Lee Burroughs resulting from a tractor-trailer crash which occurred on March 9, 2007. Plaintiffs allege that Defendant's employee, Fred Currie, was driving a truck on Interstate 70, in Charles County, Missouri, when he was involved in an accident with Plaintiff John Burroughs. Plaintiffs title Count I as Negligence and allege liability on the part of Defendant pursuant to the doctrine of respondeat superior based on the conduct of Defendant's employee, Currie. In particular, in Count I Plaintiffs allege that Defendant failed to properly train Currie; that Currie was not qualified to operate the tractor-trailer; that he was operating the tractor-trailer in violation of the law; that Currie's conduct was reckless and intentional; and that Defendant has a history of Federal Motor Carrier Safety Regulation violations. In Count II, which incorporates the allegations of Count I, Plaintiffs allege Negligent Hiring, Supervising,

Retention, and Training against Defendant and seeks punitive damages from Defendant. In Count III, Plaintiffs allege Negligence Per Se. Defendant has admitted that Currie was its agent for purposes of this litigation.

Plaintiffs have retained the services of William Hampton, an accident reconstructionist and consultant, to review various materials and opine on numerous matters related to Plaintiffs' cause of action. Mr. Hampton prepared an October 15, 2008 Report and an October 23, 2008 Supplemental Report. Based on the Report of the Highway Patrol which contained statements of eyewitnesses, and based on his visiting the scene of the accident, Mr. Hampton stated in his October 15, 2008 Report that on March 9, 2007, Mr. Currie was operating a tractor trailer in the middle lane, eastbound on Interstate 70, when a vehicle merging onto eastbound Interstate 70 from Brian Road caused a pick up truck to swerve into Currie's lane; that, in order to avoid contact with the pick up truck, Currie swerved into the left lane where John Burroughs was driving; and that Burroughs, in turn, swerved his vehicle onto the shoulder to avoid a collision with Currie. In his deposition, Mr. Hampton testified that Currie would have had 1.5 seconds to avoid a collision once he perceived an oncoming hazard; that the proximity of the vehicles, "their speed [and] distance would not have allowed any stopping time prior to any contact between the two vehicles"; that Currie's speed was not a factor contributing to the incident; that Burroughs and Currie were both traveling at approximately 60 miles per hour, which was the posted speed limit; and that fatigue was not a contributing factor.

Defendant seeks to exclude from evidence Mr. Hampton's pre and post-accident criticism of the training and supervision of Currie by Defendant and Mr. Hampton's criticism regarding how Defendant comported itself after the accident on the basis that he is unqualified to opine in this regard. Defendant also contends that Mr. Hampton's opinions should be barred because they have no underlying factual basis and are speculative, not casually connected to the incident, immaterial,

2

and highly prejudicial. Doc. 77 at 8. Specifically, Defendant asks the court to prohibit Mr. Hampton from testifying regarding the following conclusions stated in his October 15, 2008 Report:

> 4. Mackie Moving Systems failed to adequately provide the driver training required by the Federal Motor Carrier Safety Regulations, and failed to supervise him properly while he was leased to them and operating under their authority.
>
> 5. The Safety and Operations personnel of Mackie Moving Systems does not know what the other department is doing to ensure a driver is properly trained and qualified.
>
> 6. Mackie Moving Systems violated their own hiring policy for hiring Joseph Currie for having a moving violation within the previous 3 years of being hired, and also moving forward and hiring Joseph Currie after he lied on his application.
>
> 7. Mackie Moving Systems did not further investigate Joseph Currie's previous employment position to determine why after 17 years of employment with the same company, he left and was not eligible for rehire. This should have sent a significant red flag to Mackie Moving Systems.
>
> 8. Mackie Moving Systems ignored this accident event of Joseph Currie's even after they were made aware additional investigations were being conducted.
>
> 9. Mackie Moving Systems failed to monitor the safety performance of their fleet to them under the Sate Stat program of the Federal Motor Carrier Safety Administration. If they would have done so, they would have discovered this was a recordable accident, involving one or more of these identifiers, such as a fatality, injury or towing of a vehicle.
>
> 10. Mackie Moving Systems failed to maintain and destroyed documents relating to their company, driver and vehicles around this event, after they were made aware there was pending litigation.

Defendant also seeks to exclude the following, as stated in Mr. Hampton's October 23, 2008 Supplemental Report:

> [Joseph Currie] is falsifying his driver's logs. His daily logs do not match arrival and departure times at shippers and deliveries. Also, he is operating his equipment at speeds greater than allowed by the state he travels through. His average speeds are too great for the set speed limits. If Mackie Moving Systems were conducting proper audits of Joseph Currie's daily operations and his daily driver's logs, those falsifications would be identified. Additionally, Mackie Moving Systems would know

what time their loads are being made from pickup to delivery, therefore they are
allowing this falsification.

Def. Ex. B at 5.

In addition to the reasons stated above for exclusion of Mr. Hampton's opinions, Defendant contends that the above statement from the Supplemental Report should be excluded because it is intended to "impugn the character of both Currie and Mackie." Doc. 77 at 14. Defendant further argues that because "several of [Mr. Hampton's] opinions are nothing more than legal conclusions, have no underlying factual basis, are speculative, irrelevant and highly prejudicial, they should be barred." Doc. 77 at 2. In summary, Defendant takes the position that Mr. Hampton's "testimony should be limited to matters surrounding the actual accident, including the speed of the vehicles, where the impact (if any) occurred, the weather conditions and the sight lines available to the drivers." Doc. 88 at 2.

## LEGAL FRAMEWORK

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

It has been said that Rule 702 is one of admissibility rather than exclusion." Lauzon v. Senco Prods., Inc., 270 F.3d 681 (8th Cir. 2001) (citing Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir. 1991)).

Additionally, Rule 703 clarifies the permissible bases of opinion testimony by experts. Rule 703 provides:

4

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Rule 704 clarifies when expert opinion testimony on the ultimate matter at issue is admissible:

(a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court set forth standards governing the admission of expert testimony, designed to comport with the "liberal thrust of the Federal Rules of Evidence and their general approach of relaxing traditional barriers to opinion testimony." Daubert, 509 U.S. at 588, 590. See G. Michael Fenner, The Daubert Handbook: The Case, Its Essential Dilemma, and Its Progeny, Creighton Law Review Vol. 29, No. 3, April 1996 and Supp. January, 2000.

The proposed expert testimony must meet three prerequisites in order to be admitted under Rule 702. 4 Jack P. Weinstein & Margaret A. Berger Weinstein's Federal Evidence § 702.02 [3] (2001). First, evidence based on scientific, technical, or other specialized knowledge must be relevant, that is, useful to the finder of fact in deciding the ultimate issue of fact. See id. Second, the proposed witness must be qualified to assist the finder of fact. See id. Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of facts accepts

it at true, it provides the assistance the finder of fact requires... ." Id. See also Daubert, 509 U.S. at 591; Lauzon, 270 F.3d at 686. [1]

In Daubert, the Supreme Court directed trial courts to act as gatekeepers, assessing at the outset "whether the reasoning or methodology underlying the testimony is scientifically valid and... whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-3.[2]

However, Daubert further recognized that the standards delineated in its opinion applied only to the admissibility of the evidence; the weight to be accorded to such testimony was still a matter for the jury. The Daubert criteria is properly applied "not only to 'scientific' knowledge but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999). The Supreme Court held in Daubert that "[t]he focus (of its inquiry into the reliability of expert scientific testimony), of course, must be solely on principles and methodology, not on the conclusions they generate." Daubert, 509 U.S. at 595. Rather, " vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596 (citation omitted). Thus, the court must approach its "gatekeeping task with proper

---

[1] "The Eighth Circuit has been consistently loyal to the language of Daubert and Federal Rule of Evidence 702." Lauzon v. Senco Products, 270 F.3d 681, 687 n.2 (8th Cir. 2001) and numerous cases cited therein.

[2] In Daubert, the Supreme Court further delineated several, non-exclusive criteria for district courts to consider in assessing the validity of scientific evidence. These criteria are:

- Whether the methodology can or has been tested;
- Whether the methodology has been subjected to peer review and publication;
- The known or potential rate of error of the methodology; and
- The methodology's general acceptance among the scientific community.

Daubert, 509 U.S. at 593-94.

deference to the jury's role as the arbiter of disputes between conflicting opinions" and the expert's opinion should only be excluded if it is "so fundamentally unsupported that it can offer no assistance to the jury." Awkwright v. Gwinner Oil, Inc., 125 F.3d 1176, 1183 (8th Cir. 1997); Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995).

The proponent of expert testimony bears the burden of proving by a preponderance of the evidence that the testimony is admissible. Daubert, 509 U.S. at 592; Lauzon, 270 F.3d at 686; Davidson v. Bether Co., 1997 WL 321489 at *2, n.2 (E.D. Mo. 1997). Expert testimony is admissible if it will assist the trier of fact and if "(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods and (3) the witness has applied the principles and methods reliably to the facts of the case." Daubert, 509 U.S. at 593-95. With these principles in mind, the court turns to an analysis of the admissibility of the report and testimony of Plaintiffs' expert witness, Mr. Hampton.

## DISCUSSION OF DAUBERT FACTORS

**A.     Relevancy:**

Defendant contends that because it has admitted agency on the part of its driver, Currie, Mr. Hampton's conclusions are irrelevant and highly prejudicial and that, therefore, they should be excluded pursuant to Fed. R. Evid. 403 and Daubert. In support of this position, Defendant cites McHaffie v. Bunch, 891 S.W.2d 822 (Mo. 1995) (en banc). This court has previously held that McHaffie does not bar Plaintiffs' claims for negligent hiring, training, supervision and entrustment. Doc. 79. As such, the court finds that McHaffie does not support Defendant's position that certain conclusions stated by Mr. Hampton in his reports should be barred. In particular, the court notes that the opinions to which Defendant objects reference Defendant's own independent actions, and,

as such, they are relevant to Plaintiffs' claims for negligent hiring, training, supervision, and retention and also to Plaintiffs' claim for punitive damages.

In regard to Mr. Hampton's Conclusion 6, which relates to Defendant's allegedly violating its own hiring policy upon its hiring Currie, Conclusion 7, which relates to Defendant's alleged failure to investigate Currie's previous employment position, and Mr. Hampton's opinion regarding Defendant's violation of its internal policies, Defendant contends that these conclusions amount to evidence of prior bad acts; that they are irrelevant; and that, therefore, they should be excluded. Defendant also argues that Mr. Hampton's above quoted opinion as stated in his October 23, 2008 Report should be barred on this same basis. Because the Federal Motor Carrier Safety Regulations include requirements regarding investigation and training of new employees, the court finds that Conclusions 6 and 7 and the above quoted portion of Mr. Hampton's Supplemental Report, to the extent they reference Defendant's violation of its own policies, should not be barred as prior bad acts; these matters are relevant to the issues which will be submitted to the jury, including whether Plaintiffs are entitled to punitive damages. See Coon v. American Compressed Steel, Inc., 207 S.W.3d 629, 638 (Mo. Ct. App. 2006) (upholding an award of punitive damages based on the defendant's failure to comply with federal and state motor carrier regulations and industry standards).

**B.     Mr. Hampton's Qualifications:**

Defendant argues that Mr. Hampton is not qualified to testify on certain matters, including the pre and post accident conclusions set forth in his reports. Defendant acknowledges, however, that Mr. Hampton's training and experience allow him to opine on the dynamics surrounding the accident. Defendant contends that, as an accident reconstructionist and consultant, Mr. Hampton's opinions should be limited to the dynamics surrounding the accident. In particular, Defendant contends that Mr. Hampton's opinions should be limited to matters such as the speed of the vehicles, where the

8

impact occurred, the weather conditions, and sight lines. Defendant contends that Mr. Hampton went beyond his area of expertise, when he enumerated eleven "final conclusions."

In his deposition, Mr. Hampton testified that he formerly worked for the Missouri Highway Patrol; that he is the sole employee of W.E. Hampton and Associates, Inc., where he performs accident reconstruction and is a consultant who provides safety audits, on a contract basis, for motor carriers; that he has never been in an over-the-road commercial truck; and that he does not have a commercial driver's license. Mr. Hampton has, for the past nineteen years, in the course of his business, provided the following services to the legal community, commercial motor carriers, private companies, and the insurance industry: motor vehicle accident reconstruction, motor carrier safety compliance, development of motor carrier safety policies, motor carrier safety reviews and audits, assisting the motor carrier during Federal Motor Carrier Safety Administration Audits, acquisition risk analysis, insurance underwriting safety reviews, and expert testimony in civil and criminal litigation. Pl. Ex. 1.

The Eighth Circuit addressed Rule 702's reference to the qualifications of experts in Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir. 1991), where the court stated that:

> Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. See J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 702[02] at 702-30 (1988). The Advisory Notes to the Rule comment that "[t]he fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized' knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by 'knowledge, skill, experience, training or education.'" Fed. R. Evid. 702, Advisory Note.

In addition to his expertise as an accident recontsructionist, Mr. Hampton has specific skill and expertise relevant to motor carrier safety compliance and Federal Motor Carrier Safety Regulations and their implementation. The court finds that Mr. Hampton is qualified to testify

regarding the matters to which Defendant objects to his testifying, including conclusions 4-10 in his October 15, 2008 Report and the above quoted conclusion from his Supplemental Report.

**C.     Methodology and Factual Basis**:

An expert must have a reasonable factual basis for his testimony and his conclusions must be based on reliable methods. See Fed. R. Evid. 702, 703; Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141-42 (1997); Daubert, 509 U.S. at 589.  In its role of gatekeeper, upon insuring reliability of expert testimony, the court must engage in an analysis of methodology used by an expert.  In this regard, the Supreme Court has stated:

> Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion offered.

General Electric, 522 U.S. at 519.  See also Target Market Publ'g., Inc. v. ADVO, Inc., 136 F.3d 1139 (7th Cir.1998) (holding that district court properly excluded testimony of damages expert which testimony was based on optimistic assumptions that were implausible in light of evidence).

Prior to reaching his conclusions, Mr. Hampton reviewed numerous materials, as stated in his October 15, 2008 Report.  These materials include, among other sources: the Missouri State Highway Patrol Accident Investigation Report; Fredericks Investigations telephone interviews with three witnesses; the depositions of Plaintiff John Burroughs and Robert Smith, Defendant's Safety Compliance Manager; Weather Underground, weather information; Federal Motor Carrier Administration records regarding Mackie; and the Federal Motor Carrier Administration crash report. Doc. 77, Ex. 1 at 2.

Mr. Hampton's conclusions were formulated based on his review of the above documents. These documents provided the basis for Mr. Hampton's conclusions. For example, in his October 15, 2008 Report, Mr. Hampton noted that Robert Smith, Mackie's Safety Compliance Manager, stated that he was not aware of anyone who trained Currie prior to the crash; that he provided Currie with training after the crash; that he has not "read the entire Federal Motor Carrier Safety Regulations"; and that Defendant's Accident Committee took no action concerning the incident which is the subject of this lawsuit. Doc. 77, Def. Ex. 1 at 10-12. Also, Mr. Hampton stated in his Report, that he reviewed Currie's training records; that these records included no documentation of pre-hire training or post-hire orientation; that he searched on the FMCSA database and determined that Defendant did not have a safety rating; and that he reviewed the U.S. DOT Large Truck Causation Study (2005), which indicated that Over the Lane Maneuvers were the number one cause of truck crashes. Doc. 77, Def. Ex. 1 at 12-13.

As such, the court finds that Mr. Hampton stated a reasonable factual basis for his conclusions; that his conclusions were based on reliable methods; and that there is not an analytical gap between data considered and Mr. Hampton's opinion which would warrant exclusion of Mr. Hampton's opinion. See Fed. R. Evid. 702, 703; Gen. Elec. Co., 522 U.S. at 141-42; Daubert, 509 U.S. at 589.

**D.    Mr. Hampton's Opinion Regarding Defendant's Compliance with Applicable Statutes:**

To the extent that Mr. Hampton's report has addressed Defendant's compliance with applicable statutes, the Advisory Notes to Rule 704(a) state that Rules 701-704 "afford ample assurances against the admission of opinions which would merely tell the jury what result to reach." Further, the Eighth Circuit holds that expert opinion testimony is not admissible regarding questions of law. See Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995). "Legal conclusions [are]

11

for the court to make." Id. See also Nieves-Villaneuva v. Soto-Rivera, 133 F.3d 92, 99 (1st Cir. 1997) ("In our legal system, purely legal questions . . . [are] exclusively the domain of the judge."). Rule 702, which governs the admissibility of expert testimony, is interpreted to provide that expert testimony which offers a legal opinion is not admissible. See Kostelecky v. NL Acme Tool/NL Indus., Inc., 837 F.2d 828, 830-31 (8th Cir. 1988). Specifically, Rule 702 does not permit "an expert to interpret a legal document and substitute his judgment for that of the court." See Eastern Associated Coal Corp. v. Aetna Cas. & Sur. Co., 475 F. Supp. 586, 592 (W.D. Pa. 1979) (citation omitted), rev'd in part on other grounds, 632 F.2d 1068 (3rd Cir. 1980).

On the other hand, expert opinion is admissible to "assist the trier of fact to understand the evidence or to determine a fact at issue." Rule 702. The rule for admission of expert testimony may be construed broadly. See Arcoren, 929 F.2d at 1239 (citation omitted). "Likewise, an expert may give opinions if there are sufficient facts already in evidence to take the opinion out of the realm of mere speculation or guesswork." McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1408 (8th Cir. 1994) (citing Hurst v. United States, 882 F.2d 306, 311 (8th Cir.1989)). The Eighth Circuit has further clarified that:

> "The admissibility of opinion testimony is generally committed to the sound discretion of the trial court." Kostelecky v. NL Acme Tool/NL Indus., Inc., 837 F.2d 828, 830 (8th Cir.1988). Although Rule 704(a) provides that expert opinions are not inadmissible merely because they embrace an ultimate issue in the case to be decided by the jury, not all expert testimony is admissible. United States v. Whitted, 11 F.3d 782, 785 (8th Cir.1993). The touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact. See, e.g., id.; Johnson Group, Inc. v. Beecham, Inc., 952 F.2d 1005, 1007 (8th Cir.1991); Williams v. Wal-Mart Stores, Inc., 922 F.2d 1357, 1360 (8th Cir.1990); Kostelecky, 837 F.2d at 830; Hogan v. American Telephone & Telegraph Co., 812 F.2d 409, 411 (8th Cir.1987); Strong v. E.I. DuPont de Nemours Co., 667 F.2d 682, 685 (1981).

Id. See also, Johnson Group v. Beecham, 952 F.3d 1005, 1007 (8th Cir. 1991) ("An expert witness may give opinion testimony if it will assist the trier of fact to understand the evidence or determine

12

a fact in issue. Fed. R. Evid. 702. Such opinion testimony is not inadmissible merely because it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704(a).").

Determining whether expert opinion is admissible on a particular subject and whether the expert is qualified to opine on the subject are matters given to the sound discretion of the trial court. "[T]he only true criterion is: On this subject can a jury from this person receive appreciable help? In other words, the test is a relative one, depending on the particular subject and the particular witness with reference to that subject, and is not fixed or limited to any class of persons acting professionally." Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc., 519 F.2d 634, 642 (8th Cir. 1975) (citing J. Wigmore, Evidence s 1923 at 21 (1940)).

As noted by Justice Blackmun in Daubert, our system places great confidence in the "capabilities of the jury." To the extent Mr. Hampton's testimony at trial may be "shaky but admissible," "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking" such testimony. Daubert, 509 U.S. at 596. At trial it will be "up to [Defendant] to examine the factual basis for [Mr. Hampton's] opinion on cross examination." Norton v. Caremark, Inc., 20 F.3d 330, 340 (8th Cir. 1994). See also Sphere Drake Ins. PLC v. Trisko, 226 F.3d 951, 954-55 (8th Cir. 2000); Arkwright Mut. Ins. Co. v. Gwinner Oil Inc., 125 F.3d 1176, 1183 (8th Cir. 1997); Hose v. Chicago Nw. Transp. Co., 70 F.3d 968, 974 (8th Cir. 1996); and Loudermill v. Dow Chem. Co., 863 F.2d 566, 570 (8th Cir. 1988). Upon cross examination, Defendant will have the opportunity to adduce testimony regarding the cause of the accident, the training and supervision provided by Defendant, and pre and post accident conduct on the part of Defendant.

Additionally, should the trial court conclude that the evidence presented by Plaintiffs is insufficient to allow a reasonable juror to conclude that Plaintiffs position more likely than not is true,

the court remains free to direct a judgment pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. See Lauzon, 270 F3d at 695-96.

Under the circumstances of this case, the court finds that Mr. Hampton's opinion testimony will assist the trier of fact to understand the technical and complex evidence and to ultimately determine the facts in issue. The court finds, therefore, that Mr. Hampton's expert opinion testimony, including Conclusions 4-10 and the above quoted portion of his Supplemental Report, will be admissible.

## CONCLUSION

The court finds that, applying Rules 702-704 of the Federal Rules of Evidence, Mr. Hampton should be allowed to testify on all matters to which Defendant objects in the pending Motion and that his reports should be admitted upon a proper foundation. The court is particularly guided by the Eighth Circuit's analysis in Lauzon:

> It is far better where, ... there exists a close case ... to allow the expert opinion and if the court remains unconvinced, allow the jury to pass on the evidence. Depending on the verdict, ... the trial court can always refer to Federal Rule of Civil Procedure 50(b) and grant a judgment as a matter of law or a new trial. (footnote omitted).

Lauzon, 270 F.2d at 695-96.

**ACCORDINGLY**,

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike Report and Opinion Testimony of William Hampton is **DENIED** . Doc. 77

/s/Mary Ann L. Medler  
MARY ANN L. MEDLER  
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of March, 2010.

15