UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN LEE BURROUGHS AND ROSE BURROUGHS, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 4:07CV1944MLM ) |
| ZURICH AMERICAN INSURANCE COMPANY AND AMCO INSURANCE COMPANY, | ) ) ) ) ) |
| Defendants. | ) |

# **MEMORANDUM OPINION**

From August 2 through August 4, 2010 this case was tried to a jury. The jury returned a verdict in favor of plaintiff John Lee Burroughs for $460,000 and in favor of plaintiff Rose Burroughs for $40,000. The court did not enter judgment at that time because certain legal issues needed to be resolved prior to the time running on motions for new trial and judgment as a matter of law. The court requested briefs and the parties have addressed a set off for prior settlements, the stacking of uninsured motorist coverage and the loss of consortium claim.[1]

## I. BACKGROUND

This case arose from an accident on Interstate 70. Plaintiffs John and Rose Burroughs allege that John Burroughs, and derivatively Rose Burroughs, suffered injuries caused by the negligence of Joseph Currie, a driver for Mackie Moving

---

[1] AMCO's Brief is Doc. 151. Zurich's Brief is Doc. 152. Plaintiffs' Response in Opposition to AMCO's Brief is Doc. 155. Plaintiffs' Response in Opposition to Zurich's Brief is Doc. 156. AMCO's Reply Brief is Doc. 157. Plaintiffs' Sur Reply to AMCO's Reply is Doc. 160.

Systems Corporation ("Mackie") and the unknown operator of a "phantom vehicle." On the day before the trial was scheduled to begin John Burroughs settled with Mackie for the amount of $295,000. After the plaintiff and Mackie announced their settlement to the court, both defendants, AMCO Insurance Company ("AMCO") and Zurich American Insurance Company ("Zurich"), made oral motions to amend their answers to assert the defenses of credit and set off as a result of the settlement. On August 2, 2010 the matter proceeded to trial on plaintiffs' claims that their injuries were caused by the negligence of the operator of the "phantom vehicle." On August 4, 2010 the jury returned a verdict against defendants AMCO and Zurich, finding that the operator of an uninsured motor vehicle was negligent and that John and Rose Burroughs were injured as a result of such negligence. The jury found that John Burroughs was damaged in the amount of $460,000 and that Rose Burroughs was damaged in the amount of $40,000.

## II. STACKING AND THE AMOUNT TO BE STACKED

AMCO provided Uninsured Motorist coverage (sometimes known as UM coverage) in the amount of $50,000 per person on each of three vehicles owned by John Burroughs. Zurich provided Uninsured Motorist coverage in the amount of $25,000 per person on the truck driven by John Burroughs and owned by his employer, Flying J, Inc.

It is well-settled Missouri law to permit the stacking of Uninsured Motorist coverage. <u>Cameron Mut. Ins. Co. v. Madden</u>, 533 SW2d 538 (Mo. banc 1976). The Missouri Supreme Court held that "... public policy as declared in § 379.203

mandates that when an insured has two separate policies containing Uninsured Motorist clauses, effect shall be given to both coverages without reduction or limitation by policy provisions. . ." Id. at 542. Subsequent cases have held that "[w]hether multiple vehicles are covered under one policy or under separate policies is irrelevant to the question of stacking." Blum v. Allstate Ins. Co., 296 F.Supp. 2d 1037, 1041 (E.D.Mo. 2003). The parties do not dispute that Uninsured Motorist coverage may be stacked. Although John Burroughs was driving a vehicle insured by Zurich, none of John Burroughs' three vehicles was involved in the accident. In addition to the public policy permitting stacking, to the extent an insurance policy attempts to limit stacking to situations where a listed car is involved in the accident, it violates the public policy of Missouri. Id.

In the present case the issue before the court is whether public policy requires stacking beyond the statutory minimum limits of $25,000. Missouri requires all automobile insurance policies issued in this state to carry Uninsured Motorist coverage. Mo.Rev.Stat. § 379.203, the Motor Vehicle Financial Responsibility Law, provides in pertinent part:

> No automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto. . .in not less than the limits for bodily injury or death set forth in section 303.030, R.S.Mo., for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

Mo.Rev.Stat. § 379.203(1). The limits for bodily injury or death of Mo.Rev.Stat. § 303.030.5 are $25,000 per person, $50,000 per occurrence and $10,000 for property damage. All policies of liability insurance extend Uninsured Motorist coverage to "persons insured thereunder." Blum, 296 F.Supp. 2d at 1040.

"As a federal court sitting in diversity, this court must apply the laws and policies of the State of Missouri in construing this insurance policy." Nolen v. Country Mut. Ins. Co., 2005 WL 3133506(E.D.Mo.). "The court looks first to decisions of the Missouri Supreme Court. Id., citing Blum v. Allstate Ins. Co., 296 F.Supp. 2d at 1039. If no relevant decisions are available, the court will look to Missouri Appellate Court decisions. Id. "The task is to determine how the Missouri Supreme Court would decide the issue at hand." Id.

The Missouri Supreme Court has not ruled definitively on the issue of the amount of stacking. The most recent Supreme Court case dealing with the issue is Ragsdale v. Armstrong, 916 S.W. 2nd 783 (Mo.banc 1996) which was a *per curiam* opinion with several concurring and dissenting opinions.[2] Because four justices agreed that plaintiff should recover $40,000, which included $25,000 (the statutory

---

[2] Ragsdale has unusual facts. The plaintiffs, John and Donna Ragsdale, were Missouri residents injured in a collision with a Louisiana resident who, pursuant to Louisiana law, carried auto liability limits of $10,000 per person and $20,000 per accident. John and Donna settled with the liability insurer for $10,000 and $7,500 respectively. They then made a claim against their insurer for Uninsured Motorist benefits by claiming the tortfeasor was technically operating an "uninsured motor vehicle" because he was not insured with limits equal to or greater than the statutory minimum in Missouri. Ragsdale, 916 S.W. 2d at 784. The Ragsdales sought to stack the Uninsured Motorists limits of two policies containing limits of $100,000 per person and $50,000 per person respectively.

minimum) under each of two Uninsured Motorist policies minus the $10,000 already received, the case was reversed and sent back to the circuit court.

"Viewing the Ragsdale opinion as a whole, it offers very little guidance by the Supreme Court of Missouri." Tatum v. Van Liner Ins. Co., 104 F.3d 223, 225 (8th Cir. 1997). "Although it is somewhat enigmatic, we read Ragsdale as an indication that the Missouri Supreme Court will allow recovery under a UM policy, even when the plaintiff has received some recovery under a motor vehicle liability policy, but only up to the statutory minimum, reduced by the amounts already recovered." Id. Ragsdale and the UM provisions of Mo.Rev.Stat. § 379.203 focus on ensuring that an injured motorist "has available at least the statutory minimum amount of recovery required by the Motor Vehicle Financial Responsibility Law, Mo.Rev.Stat. § 303.030.5." Id.

Other cases agree. In Blum v. Allstate Ins. Co., 296 F.Supp. 2d 1037 (E.D.Mo. 2003) the court held that although Blum could stack his three UM policies he could not recover the full $50,000 on each of them.[3] The court acknowledged that "while § 3097.203 dictates the minimum requirements for Uninsured Motorist coverage in motor vehicle liability policies, the parties to an insurance contract are always free to implement policies which exceed the statutory requirements." Blum, 296 F.Supp

---

[3] None of Blum's parents' vehicles was involved in the accident. The policy provided that if none of the covered autos was involved in the accident, then liability under the Uninsured Motorist provision was limited to the coverage for one auto - $50,000. The court allowed the $50,000 recovery plus the statutory minimum on each of the other two vehicles.

at 1042, quoting, Ezell v. Columbia Ins. Co., 942 S.W.2d 913, 919 (Mo.Ct.App. 1996). As in Blum, here AMCO and John and Rose Burroughs exceeded the minimum requirement when they contracted for $50,000 coverage for each of the three vehicles. "The public policy is violated only by the policy's attempt to provide coverage below the statutory minimum of $25,000; public policy does not require insurance companies to provide coverage above that minimum." Blum, 296 F.Supp. at 1042; see also, Blake v. Farmers Ins. Co., 2010 WL 3055189 (E.D.Mo.) following the plurality in Ragsdale and limiting Blake's recovery to the statutory minimum of $25,000 on each of his policies, reduced by the amount already received.

Based on the weight of the authority from the Missouri Supreme Court, the Eighth Circuit and the Eastern District of Missouri, the court finds that the four policies at issue (three issued by AMCO; one issued by Zurich) may be stacked up to the statutory minimum of $25,000 each for a total of $100,000.

## III. SET OFF

As noted above, the jury returned a verdict for John Burroughs in the amount of $460,000. He had already settled with Mackie for $295,000.[4] Mo.Rev.Stat. § 537.060 provides in pertinent part:

> When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however, such agreement shall reduce the claim

---

[4] Again as noted above, the entire $295,000 settlement was allocated to John Burroughs' claim. Rose Burroughs did not and will not recover any amount of money in settlement for her claim.

by the stipulated amount of the agreement, or in the amount of the consideration paid, whichever is greater.

Both AMCO and Zurich originally argued they are entitled to a set off of $295,000 from the $460,000 awarded to John Burroughs because under Missouri law a joint tortfeasor is entitled to a credit against any judgment in the amount of the settlement received from another tortfeasor. For example, under the AMCO policy, AMCO agreed to pay the plaintiff damages that plaintiff "would be legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury." See Exhibit A to AMCO's Brief, Doc. 151. AMCO argued that because the operator of the uninsured motor vehicle was a joint tortfeasor with the operator of the Mackie truck, if the verdict were against the uninsured motorist, plaintiffs would be subject to §537.060 and the amount of the settlement with Mackie ($295,000) would be offset from the $460,000 verdict. AMCO's reasoning was that because John Burroughs would only be legally entitled to recover $165,000 from the owner/operator of the uninsured motor vehicle ("ignoring, for the moment, the policy limits") AMCO should be credited for the settlement amount and the verdict should be reduced accordingly.

Plaintiffs claim that this argument fails because §357.060 applies to joint tortfeasors only and Uninsured Motorist carriers are not tortfeasors. AMCO does not dispute that its liability arises from the contract and subsequently admitted that it is not a joint tortfeasor. Plaintiffs cite numerous cases to support their theory. See, Smith v. Gray, 979 S.W. 2d 190, 193 (Mo.Ct.App. 1998) (basis of recovery is contractual after proof of causal negligence on the part of the uninsured motorist);

Ozark Airlines, Inc. v. Valley Oil Co., 239 S.W. 3d 140, 144 (Mo.Ct.App. 2007) (§537.060 is only applicable between joint tortfeasors and does not address liability under a contract only); Stotts v. Progressive Classic Ins. Co., 118 S.W. 3d 655, 664 (Mo.Ct.App. 2003) ("It is well settled that the right of the injured party to recover from an Uninsured Motorist carrier arises from the insurance contract rather than a tort" quoting Gaunt v. State Farm Mut. Auto. Ins. Co., 24 S.W. 3d 130, 136 (Mo.Ct.App. 2000)).

In McKinney v. State Farm Mut. Ins. Co., 123 S.W. 2d 242, 247 (Mo.Ct. App. 2003) the court stated "[a]n Uninsured Motorist coverage claim is a separate and distinct cause of action from the tort claim asserted against the uninsured motorist." In McKinney, the court affirmed Missouri precedent that the insurance carrier does not "step into the shoes" of an uninsured motorist and pay the injured party the damages that party could legally recover from the uninsured motorist for his tortuous conduct. Id. at 249 citing Oates v. Safeco Ins. Co. of America, 583 S.W.2d 713, 717 (Mo. banc. 1979). This is because "the right to recover on an Uninsured Motorist claim is an action in contract, not in tort." Id. at 246 and numerous cases cited therein. Although, McKinney dealt with prejudgment interest and not the "bodily injury" covered by the Uninsured Motorist coverage contract at issue here, the McKinney court clearly looked to the contract to determine the extent of the liability of the Uninsured Motorist carrier.

Plaintiffs also cite cases which specifically preclude a person liable in tort from receiving a credit for amounts paid by the Uninsured Motorist carrier. For example,

in <u>Elfrink v. Burlington Northern RR Co.</u>, 845 S.W.2d 607, 614 the amount of the settlement with the plaintiff's own insurance carrier prior to trial could not reduce the joint tortfeasor's liability.

Also, in <u>Haggedorn v. Adams</u>, 845 S.W. 2d 470, 478 (Mo. Ct. App. 1993) the plaintiff settled with the Uninsured Motorist carrier and went to trial against various other tortfeasors. The other tortfeasors asked the court for a set off of the amount received from the Uninsured Motorist carrier. The court, relying on the collateral source rule, held that the other tortfeasors were not entitled to a credit "for payments under a policy of insurance by the insured's own insurance company to the insured for which the insured has paid a premium." <u>Id.</u> at 479.

In the present case the settlement was with the joint tortfeasor, not the Uninsured Motorist carrier. This is a critical distinction.[5] In <u>Tatum</u>, the plaintiff had

---

[5] Plaintiffs cite <u>Carter v. St. John's Regional Medical Center</u>, 88 S.W.3d 1 (Mo. Ct. App. 2002) in support of their argument that it does not matter who settles first. In <u>Carter</u>, a doctor sued the medical center in contract and tort. Prior to trial he settled with several co-defendants for $40,000 and proceeded to trial against the medical center. The trial court refused to reduce the judgment by the $40,000 settlement. Eventually the Court of Appeals reversed the part of the judgment that was for tort damages and affirmed the damages for breach of contract. The court did not allow a set off of the $40,000 because the judgment was for the contract claim only. Plaintiffs in the present case argue that pursuant to <u>Carter</u>, a jury verdict on a contract claim is never entitled to a credit or off set pursuant to § 537.060 Mo.Rev.Stat., regardless of who settles first. The <u>Carter</u> case is easily distinguished. It does not involve uninsured motorist coverage and it does not involve statutorily imposed minimums. It does not involve a situation in which the liability arises from a contract only after the underlying tort is proved. <u>See</u> <u>McKinney</u>, 123 S.W. 3d at 249-50 ("...the action by the insured against his insurer under the uninsured motorist endorsement is an action on the policy and sounds in contract although in order to recover the insured must prove the negligence of the uninsured motorist.") <u>quoting</u> <u>Sahloff v. W.Cas. & Sur. Co.</u>, 171 N.W.2d 914 (Wis. 1969).

already settled with the tortfeasor for $150,000 and then subsequently brought an action to recover under an Uninsured Motorist provision in a policy issued to the owner of the vehicle in which he was injured. The court considered that the focus in Ragsdale and the Uninsured Motorists provisions of Mo.Rev.Stat. § 379.203 is to insure that an injured motorist has available at least the statutory minimum amount of recovery required by the Motor Vehicle Financial Responsibility Law, Mo.Rev.Stat. § 303.030.5. The court reasoned that because the plaintiff had already received far in excess of the statutory minimum, the public policy of Missouri's Uninsured Motorist statute was satisfied, and a set off would not serve to reduce the statutorily required minimum Uninsured Motorist coverage. Therefore the court held that the specific set off provision in the policy was valid. In other words, the *policy provisions* did not reduce the recovery to less than the statutory minimum. See Blum, 296 F.Supp.2d at 1040, citing Cameron, 533 S.W.2d at 543.

In the present case neither AMCO nor Zurich claim to have set off provisions in their policies. Nevertheless, the court finds that the reasoning of Tatum, Blum and Cameron applies. A set off should be permitted as long as it does not reduce plaintiff's recovery below the statutory minimum.

In addition, the "collateral source rule permits recovery against a wrongdoer for the full amount of damages even though the plaintiff is also compensated from a different source which is 'wholly independent' of the wrongdoer and whose payment is therefore collateral to his." Tatum, 104 F.3d at 225, citing Overton v. United States, 619 F.2d 1299, 1306 (8th Cir. 1980).

> **Under this rule 'a wrongdoer' is not entitled to have damages for which he is liable reduced by amounts received by the claimant from a collateral source. Id. However the application of the collateral source rule depends on proof that the plaintiff has contributed to the fund that he claims as a collateral source. Id. The policy behind the collateral source rule simply is not applicable if the plaintiff has incurred no expense, obligation, or liability in obtaining the services for which he seeks compensation.**

Tatum, 104 F.3d at 225 (emphasis added), citing Washington v. Barnes Hospital, 897 S.W. 2d 611, 620-21 (Mo. 1995) (en banc) (citing with approval Florida Physicians' Ins. Reciprocal v. Stanly, 452 S.So. 2d 514, 519-16 (Fla. 1984).

Therefore, in a case in which a plaintiff has paid a premium for his insurance, he is entitled to the benefit of his bargain and thus the amounts received from his carrier are not set off from his recovery from a tortfeasor. However, the opposite is true in the instant case.

Here, plaintiff settled with the tortfeasor. He had made no contribution to this fund. Therefore, the collateral source rule does not apply and the Uninsured Motorist carriers are entitled to a set off of the amount already paid which was far in excess of the statutory minimum.[6] Therefore, AMCO and Zurich are entitled to a $295,000 set off from the $460,000 awarded to John Burroughs.

Authority from the Supreme Court of Missouri supports this position. "Viewing the Ragsdale [916 S.W. 2d 783 (Mo. 1996) (en banc)] opinion as a whole, it offers very little guidance by the Supreme Court of Missouri, other than the end

---

[6] The court emphasizes, however, as stated above, that if a set off would reduce the injured party's recovery below the statutory minimum, the set off should not be allowed. Tatum, 204 F.3d at 225.

result which was to allow the set off of Uninsured Motorist coverage by other insurance recoveries" from the inadequately insured tortfeasor. Tatum, 104 F.3d at 225, see also Nolan v. Country Mut. Ins. Co., 2005 WL 3133506 (E.D.Mo. at *4).

## IV. CONSORTIUM CLAIM

The jury awarded $40,000 to Rose Burroughs on her Loss of Consortium claim.

### A. The Zurich Policy[7]

Zurich issued a policy to Flying J, Inc., John Burrough's employer, which provided for Uninsured Motorist coverage in the amount of $25,000. The policy provided in pertinent part:

> A. Coverage
> 1. We will pay all sums the Insured "is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". ...

The coverage for an uninsured motor vehicle is modified by an endorsement that provides in pertinent part:

> "Regardless of the number of "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" to any one person resulting from any one "accident", including all damages claimed by any person or organization for care, loss of services or death resulting from the "bodily injury", is the limit of "bodily injury" for each person shown in the schedule applicable to each covered "auto."

---

[7] The Zurich policy and the AMCO policy have significant differences in policy language covering loss of consortium claims. Therefore, they will be taken up separately.

The agreement unambiguously states that damages must result from bodily injury sustained by an insured caused by an accident. The policy defines "bodily injury" as follows: "Bodily injury means bodily injury, sickness or disease sustained by a person including death resulting from any of these." Although Rose Burroughs is undisputedly an "insured" she presented no evidence of bodily injury, sickness or disease. Her Loss of Consortium claim is derivative of the damages sustained by her husband. Thus by the clear language of the policy, her claims are limited by the "bodily injury" to "each person" under the UM coverage limits.

This finding is supported by <u>Ward v. American Family Ins. Co.</u>, 783 S.W. 2d 921 (Mo.Ct.App. 1989) where a wife recovered the policy limits for UM coverage and her husband sought additional damages for loss of consortium, the court said:

> Plaintiff's claim for loss of consortium must be included within the "each person" limit. Under Missouri law, a husband's claim for loss of consortium is derivative of his wife's claim for bodily injury. [citations omitted] Moreover, the policy language defines, "bodily injury" as "bodily injury due to bodily injury or sickness, disease or death of any person." So defined, we understand the clause to require some physical harm to the person claiming a bodily injury. Plaintiff properly recovered $350 for his own bodily injuries. Regarding Karen's [wife's] injuries, she alone suffered physical harm. While admittedly covered by the insuring clause, plaintiff's [husband's] derivative damages do not constitute a separate and distinct bodily injury".

<u>Ward</u>, 783 S.W. 2d at 923.

The present case is analogous to the <u>Ward</u> case. In addition, the language of the Zurich policy tracks language consistently found to be unambiguous. For example, in <u>Fildes v. State Farm Mut. Auto. Ins. Co.</u>, 873 S.W. 2d 883 (Mo.Ct.App. 1994) the policy provided on the declarations page under the Limits of Liability:

"Under each person is the amount of coverage for all damages, including damages for care and loss of services, arising out of and due to bodily injury to one person". Fildes, 873 S.W. 2d at 884. In interpreting the policy the court made "close examination of language analyzed in other cases." Id.

The limits of liability in Fildes' State Farm policy and the limit of liability in the Zurich policy are consistent. The Fildes court said:

> State Farm has never contended she could not so recover. It merely contends her damages can only be paid from the "each person" liability limit. Application of that limit, which includes within its definition of "all damages" those damages for loss of services does not bar Cleta's [wife's] recovery but merely limits it. Id. at 886.

In the present case the Zurich policy limits are $25,000. Because John Burroughs' damages exhaust that limit no additional coverage is available for Rose Burroughs' derivative claim for Loss of Consortium.

B. The AMCO Policy

Plaintiffs argue that AMCO must pay its limit to John Burroughs and an additional $40,000 to Rose Burroughs for her derivative claim. AMCO argues that while there may have been occasions when a spouse was able to recover from an Uninsured Motorist vehicle carrier for his/her derivative Loss of Consortium claim, in this case, recovery for Rose Burroughs is available only if her husband's recovery is less than the per person policy limit.

In plaintiffs' Sur Reply (Doc. 160) plaintiffs do not object to AMCO's position that the claims made by John and Rose Burroughs are capped by paragraph A.1 of the Limit of Liability clause. However, plaintiffs "vehemently" contend that

paragraph A.1 establishes that the maximum limit of liability is the SUM of the "each person" limit. . . (emphasis by plaintiffs).

AMCO's policy states:

**LIMIT OF LIABILITY**
A. If "bodily injury" is sustained in an accident by you or any "family member":

> 1. Our maximum limit of liability for all damages, <u>including damages for care, loss of services</u> or death, arising out of "bodily injury" sustained by any one person in any such accident is the sum of the limits of liability shown in the Declarations for each person for Uninsured Motorist coverage.

Numerous cases have examined the "each person" limitations. "Disputes arising from interpretations and application of an insurance policy are matters of law to be determined by the court." <u>Blum</u>, 296 F.Supp. 2d at 1039 <u>citing</u> <u>McCormak Baron Mgmt. Servs., Inc. v. American Guarantee & Liab. Ins. Co.</u>, 989 S.W. 2d 168, 171 (Mo. 1999) (en banc). "Because insurance policies are designed to provide protection, they will be liberally interpreted to grant rather than deny coverage." <u>Blum</u>, 296 F.Supp. 2d at 1039, <u>quoting</u> <u>Cawthon v. State Farm Fire & Cas. Co.</u>, 965 F. Supp. 1262, 1264 (W.D. Mo. 1997). If there is ambiguity, it must be resolved against the insurer. <u>Chambers</u>, 860 S.W. 2d at 21, <u>citing</u> <u>Cano</u>, 656 S.W. 2d at 271. "Language in an insurance policy is said to be ambiguous "if it is reasonably open to different constructions," <u>Id.</u>, quoting <u>Krombach v. Mayflower Ins. Co.</u>, 827 S.W. 2d 208, 210 [Mo. banc 1992], or if it is "reasonably susceptible to two or more meanings. ..." <u>Id.</u> quoting <u>United States Fidelity & Guarantee Co. v. Safeco Ins. Co.</u>, 522 S.W. 2d 809, 817[7] (Mo. banc 1975). However, "plain language in an insurance

policy is not to be used to create an ambiguity where in the context of the use and application of a term none exists. ..." Id.

"The lesson we learn from these cases [dealing with "each person" limitations] is that the policy language must be microscopically dissected to determine whether an ambiguity exists." Eades v. Boswell, 852 S.W. 2d 353, 358 (Mo.Ct.App. 1993). Several cases provide explicit examples. For example in Cano v. Travelers Ins. Co., 656 S.W. 2d 266 (Mo. 1983) the policy provisions limited liability to a total of $10,000 for all damages because of bodily injury sustained by any one person as a result of any one accident. Cano, 656 S.W. 2d at 271. The court held that there was an ambiguity because the participle "sustained" could be read as modifying both "damages" and "bodily injury." Finding an ambiguity, the court construed that provision against the insurer and allowed the consortium claimant to recover $10,000 in addition to the entitlement of the injured insured. Cano, 656 S.W. 2d at 271.

However, following the guidance of the Missouri Supreme Court to examine the syntax and punctuation of the provision at issue, the court in State Farm Mut. Auto. Ins. Co. v. Chambers, 860 S.W. 2d 19, 21 (Mo.Ct. App. 1993) found no ambiguity where the amount of bodily injury liability coverage was shown on the declarations page under "Limits of Liability...each person": "Under 'each person' is the amount of coverage for all damages, including damages for care and loss of services, arising out of and due to **bodily injury** to one **person**". Chambers, 860 S.W. 2d at 20 (emphasis in original). The court said:

> First we look at the arrangement of the sentence. The prepositional phrase "to one person" follows "bodily injury" indicating the prepositional phrase is to modify "bodily injury."
>
> The punctuation of the sentence also makes its meaning clear. The phrase "including damages for care and loss of services" is set off by commas and functions to explain the term "all damages." For the prepositional phrase "to one person" to refer to "all damages" then the phrase "arising out of and due to bodily injury" likewise would have to be set off by commas. It is not; there is no comma after "injury." Because there is no comma, it is apparent that "arising out of and due to bodily injury to one person" is to be treated as a unit, as one phrase that modifies "all damages."

In the present case as set out above, the AMCO policy states its maximum limit for all damages, "including damages for care, loss of services or death, arising out of 'bodily injury' sustained by any one person in any such accident is the **sum** of the limit**s** of liability shown in the Declarations for each person for Uninsured Motorist coverage." (emphasis added).

The court has considered the cases cited by the parties and finds no language in any of the other policies that specifies the **sum** of the limit**s** of liability for each person covered.

The court finds there is an ambiguity in the use of the word "sum." Does it mean $50,000 + $50,000 + $50,000, that is, the amount of the recovery for the one person with bodily injury and which includes Rose Burroughs' derivative claim? Or does it mean $50,000 + $50,000 + $50,000 added to the $50,000 + $50,000 + $50,000 which appears clearly stated in the Declarations for each person?[8] As stated

---

[8] The court has already found that the AMCO coverage must be stacked to the statutory minimum of $25,000 + $25,000 + $25,000. This does not affect the ambiguity of the meaning and use of the word "sum."

in Cano 656, S.W.2d at 271, if there is an ambiguity it must be construed against the insurer, citing Bellamy v. Pacific Mutual Life Ins. Co., 751 S.W.2d 490 (Mo. banc 1983). The court finds that because there is an ambiguity in the AMCO policy, Rose Burroughs is entitled to recover the jury's award of $40,000 of Uninsured Motorist coverage benefits in addition to John Burroughs' entitlement.

IV. CONCLUSION

Based on the analysis set out above:

1. The court finds AMCO's coverage on the Burroughs' three vehicles can be stacked to the statutory minimum ($25,000 x 3 = $75,000) and stacked with Zurich's $25,000 coverage for a total of $100,000 Uninsured Motorist coverage.

2. The court finds AMCO and Zurich are entitled to a set off of the $295,000 payment which John Burroughs received from Mackie. Since the jury awarded John Burroughs $460,000, the resulting liability, considering the policy limits, is $100,000.

3. The court finds that Rose Burroughs may recover from AMCO $40,000 on her Loss of Consortium claim in addition to the $75,000 limit for John Burroughs.

4. The court finds that Zurich's claims for proration of any liability between AMCO and Zurich are best left to the defendants to calculate and work out between themselves.

5. A separate judgment will be entered consistent with these findings.

/s/Mary Ann L. Medler  
MARY ANN L. MEDLER  
UNITED STATES MAGISTRATE JUDGE

Dated this   17th   day of November, 2010.