# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN LEE BURROUGHS | ) | |
| AND ROSE BURROUGHS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CV1944MLM |
| | ) | |
| ZURICH AMERICAN INSURANCE | ) | |
| COMPANY AND AMCO INSURANCE | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |

## AMENDED MEMORANDUM OPINION

This matter is before the court on various post-judgment motions filed by the parties.[1]

## I.      Background[2]

This matter arose from an occurrence which took place on March 9, 2007 on Interstate 70 in St. Charles County, Missouri. Plaintiff John Burroughs claimed that he was injured as a result of the negligence of the driver of an uninsured motor vehicle. Plaintiff Rose Burroughs claimed that she, too sustained damages for loss of consortium arising from the injury sustained by her husband. The case was tried to a jury from August 2 through August 4, 2010. The jury returned verdicts in favor of plaintiff John Burroughs in the amount of $460,000 and in favor of Rose Burroughs in the amount of $40,000. The court did not enter judgment at that time in that issues concerning the two insurance

---

[1]      In this Memorandum Opinion plaintiffs John Lee Burroughs and Rose Burroughs will be referred to as "plaintiffs" collectively, unless it is necessary to specify to which plaintiff the court is referring. Defendant AMCO Insurance Company will be referred to as "AMCO." Defendant Zurich American Insurance Company will be referred to as "Zurich." Defendant Mackie Moving Systems Corporation will be referred to as "Mackie."

[2]      The Background section is taken essentially from the background as set out in AMCO's Motion for Judgment as a Matter of Law. [Doc. 167, 168] It was adopted by plaintiffs. [Doc. 182]

policies at issue were yet to be decided. On November 17, 2010 this court made its ruling on the outstanding policy issues and entered judgment against the insurance defendants in accordance with its rulings and the jury's verdicts. Pursuant to the court's Order dated August 6, 2010 the time for filing of motions under Rule 50 and Rule 59 did not begin to run until the court entered judgment on November 17, 2010.

## II. AMCO's Renewed Motion for Judgment as a Matter of Law, Doc. 167, 168
### Plaintiffs Oppose the Motion, Doc. 182, AMCO Replied, Doc. 190

### A. Applicable Law

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, Judgment as a Matter of Law ("JAML") should not be granted unless "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). In applying this standard, a court must "draw all reasonable inferences in favor of the non-moving party without making credibility assessments or weighing the evidence." Arabian Agriculture Services Co. v. Chief Industries, Inc., 309 F.3d 479, 482 (8th Cir. 2002)(quoting Phillips v. Collings, 256 F.3d 843, 847 (8th Cir. 2001)). A court should grant judgment as a matter of law "only when all of the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the moving party.'" Kinserlow v. CMI Corp., 217 F.3d 1021, 1025 (8th Cir. 2000)(quoting Smith v. World Ins. Co., 38 F.3d 1456, 1460 (8th Cir. 1994) and White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992)). The court's review of the jury's verdict is extremely deferential and the court cannot grant the motion unless, after reviewing the evidence in the light most favorable to the verdict, the court concludes that no reasonable jury could have returned a verdict for the non-moving party. Morse v. Southern Union

<u>Company</u>, 174 F.3d 917, 922 (8th Cir. 1999); <u>Denesha v. Farmers Ins. Exchange</u>, 161 F.3d 491, 497 (8th Cir. 1998). In considering AMCO's Motion

for Judgment as a Matter of Law, this court must: (1) consider the evidence in the light most favorable to plaintiffs; (2) assume all conflicts in the evidence will resolve in plaintiffs' favor; (3) assume plaintiffs proved all facts that their evidence tended to prove; and (4) give plaintiffs the benefit of all favorable inferences that may reasonably be drawn from the proven facts. <u>See</u> <u>Morse</u>, 174 F.3d at 922; <u>Denesha</u>, 161 F.3d at 497. In order to prevail on its Motion for Judgment as a Matter of Law defendant AMCO "has the difficult task of demonstrating that all of the evidence points in [its] direction and is susceptible of no reasonable interpretation sustaining [plaintiffs'] position." <u>Morse</u>, 174 F.3d at 922.

B.    Discussion

In this Motion, AMCO argues it is entitled to Judgment as a Matter of Law because the jury did not have sufficient evidentiary basis to find for plaintiffs on their claim that the operator of an uninsured motor vehicle was negligent in that he/she "failed to keep a careful look out." The essence of a "failure to keep a careful lookout" claim is a failure to see and a failure to act. <u>Hayes v. Price</u>, 313 S.W.3d 645, 650 (Mo. 2010) <u>citing</u> <u>Lovelace v. Reed</u>, 486 S.W.2d 417, 418-19 (Mo. 1972). In other words,

> alleged negligent failure to keep a careful lookout is not to be submitted to the jury unless there is substantial evidence from which the jury could find that, in the exercise of the highest degree of care, the allegedly negligent party, had he kept a careful lookout, could have seen the other vehicle. . .in time thereafter to have taken effective precautionary action.

<u>Hayes</u>, 313 S.W.3d at 650 <u>quoting</u> <u>Heberer v. Duncan</u>, 449 S.W.2d 561, 563 (Mo. banc 1970).

The inquiry is two-fold:

> If the driver was keeping a careful lookout, could the driver have seen the danger; and if the driver could have seen the danger, did the driver have the

ability to take some precautionary measure such as veering, utilizing a horn, or slowing speed to prevent the accident?

Hayes, 313 S.W.3d at 650. The evidence must support a finding that a driver had the means and ability to have avoided a collision. Id. citing Thurman v. Anderson, 693 S.W.2d 806, 807 (Mo. banc 1985). "Means and ability include sufficient time and distance considering the movement and speed of the vehicles." Id.

Having the means and ability to avoid a collision means not only the mechanical appliances, such as steering apparatus with which to swerve, signalling [sic] equipment with which to warn, or braking appliances with which to slow down or stop, but also the existence of sufficient time and distance, considering the movements and speeds of the vehicles to enable the party charged to take effective action in avoidance.

Hemeyer v. Wilson, 59 S.W.3d 574, 582 (Mo. Ct. App. 2001), quoting Zalle v. Underwood, 372 S.W.2d 98, 102 (Mo. 1963).

Evidence to show that the driver had time and distance to avoid the collision goes to the issue of proximate cause. McWilliams v. Wright, 460 S.W.2d 699, 702 (Mo. 1970).

The court is fully aware of the mandate that in evaluating a motion for JAML the court must not make credibility determinations. Assessing the evidence in the light most favorable to plaintiffs, the facts are as follows: at the site of the accident there are 3 lanes of I-70 plus the entrance ramp/merge lane from Bryan Road. The morning of the accident the weather was good, the pavement dry and the sky blue. Plaintiff John Burroughs said he was eastbound on I-70 in a tanker truck near the Bryan Road overpass and came up behind a tractor trailer in the center lane which lost speed as it went up a slight incline. He pulled into the left lane to pass the tractor trailer. Plaintiff John Burroughs' tanker truck was on cruise control going 60 miles per hour. He could not see anything in the two far right lanes. The tractor trailer came into his lane so he hit his breaks, hard enough to create

skid marks, and the tractor trailer hit his tanker and kept on going. The tractor trailer was owned by Mackie and operated by one of its drivers.

An eye witness, Ms. Lois Rohan, entered I-70 eastbound from the Bryan Road on-ramp and merged onto I-70 at the bottom of the ramp and into the far right lane. She observed a white car (the "phantom car") at the end of the curve of the entrance ramp and a red pickup truck slightly ahead of or slightly behind or along side of the white car. The red truck in the far right lane was directly in front of her. To the left of the red truck and slightly behind it was the Mackie tractor trailer and to the left of the tractor trailer - - in the far left lane - - was the tanker truck operated by plaintiff John Burroughs just partly behind the tractor trailer. Plaintiff John Burroughs' tanker was passing the tractor trailer. Ms. Rohan saw the white "phantom" car move from the on-ramp into the far right lane of I-70. The white car moved over suddenly because he was at the end of his lane and his only choices were to merge or stop. She testified the red truck swerved to the left to avoid hitting or being hit by the white "phantom" car. The tractor trailer swerved to the left also and as he did so, he hit plaintiff John Burroughs' tanker with a loud bang. The white car, the red truck and the tractor trailer drove on. Plaintiff John Burroughs' tanker truck stopped against the concrete barrier. This whole incident took only 1-3 seconds. A Highway Patrol Officer responded and measured 100 feet of skid marks.[3] However, Ms. Rohan said the officer's measurements were incorrect because the incident did not happen that far back. There was no evidence of the speed of Ms. Rohan's vehicle, the white car, the red truck or the tractor trailer. The only evidence of speed was plaintiff John Burroughs' 60 mile per hour cruise control and his effort to pass the tractor trailer as it slowed on an incline. There

---

[3]     The skid marks would indicate the tractor trailer moved in front of the tanker truck west of the Bryan Road eastbound on-ramp where it could not have been seen by Ms. Rohan.

was no evidence of distance because Ms. Rohan testified numerous times that she was not good with evaluating distance or measurements.

Another eye witness who was in the far right lane of eastbound I-70 said he saw the tractor trailer cut off the tanker truck and drive on. He was unable to say whether there were vehicles to the right of the tractor trailer or whether a vehicle swerved causing the tractor trailer to cut in front of the tanker.

Mr. Currie, the Mackie tractor trailer driver, said he was on a run to Canada and recalled no incident whatsoever. The first he learned of the accident was when a trooper called him in Canada the next day.

The court has set out the facts in considerable detail because the cases analyzing the submission of failure to keep a careful lookout are extremely fact specific.

The parties cite and distinguish the same approximate group of cases. The parties agree that normally under Missouri law to make a submissible case of failure to keep a careful lookout "the plaintiff must establish the time when and the distance at which the potential danger of collision triggered the defendant's specific duty to take effective precautionary action." <u>Zempel v. Slater</u>, 182 S.W. 3d 609, 620 (Mo. Ct. App. 2005) <u>citing</u> <u>Morgan v. Toomey</u>, 719 S.W. 2d 129, 133 (Mo.Ct.App. 1986). <u>See</u> <u>also</u> <u>Hemeyer</u>, 59 S.W. 3d at 582.

Some courts have said that "[i]n certain fact situations, however, Missouri courts have found it unnecessary to prove time and distance." <u>Zempel</u>, 182 S.W. 3d at 620, <u>citing</u> <u>McWilliams v. Wright</u>, 460 S.W. 2d 699 (Mo. 1970) and <u>Williams v. Christian</u>, 520 S.W. 2d 139 (Mo. Ct. App. 1974). However, in <u>Morgan v. Toomey</u> the court said "It has even been said, **incorrectly we think**, that <u>McWilliams</u> and <u>Williams</u> did not require 'evidence of

time and distance' to submit a 'lookout' instruction".  Id. at 133 (emphasis added).  In fact, in Williams itself the court said:

> Neither McWilliams nor the instant case represent a nuance or exception to the prevailing rule in this state relative to the submissibility of actionable negligence predicated on failure to keep a careful lookout.  They merely represent definitive fact situations where the absence of evidence as to precise time and distance does not preclude submissibility of failure to keep a careful lookout as being the proximate cause of an accident.

Williams, 520 S.W. 2d at 144.

In both McWilliams and Williams there was adequate information in their definitive fact situations from which the jury could conclude that the failure to keep a careful lookout was the proximate cause of the accident.  AMCO argues the instant case is far more akin to Bell v. United Parcel Services, 724 S.W. 2d 682 (Mo. Ct. App. 1987) in which the Missouri Court of Appeals considered whether an uninsured motorist insurance carrier was entitled to a directed verdict on the issue of failure to keep a careful lookout.  As stated by the Bell court:

> This litigation involved a motor vehicle collision which occurred about 6:15 a.m. on December 21, 1983.  It was about 20 degrees that morning and light precipitation had been reported throughout the previous night.  Immediately prior to the collision plaintiff was driving his van west on Interstate 70 and a tractor-trailer owned by defendant UPS and driven by its employee and co-defendant Johnny Lane was travelling east.  Plaintiff's second amended petition, upon which this case was tried, alleged that the driver of a small light colored car (the mystery car) negligently entered the eastbound lane of the interstate in such a manner as to cause Lane to lose control of the tractor-trailer.  It then crossed the median and collided with plaintiff's van.  The petition further alleged that the identities of the driver and owner of the small car are unknown.

Bell, 724 S.W. 2d at 683.  The uninsured motorist insurance carrier argued that plaintiff did not introduce any substantial and competent evidence on which a jury could have found that plaintiff was legally entitled to recover from the driver of the "mystery car" because there was insufficient evidence to support the charge that the driver of the mystery car

failed to keep a careful lookout. The only relevant evidence that was presented consisted of statements by the driver of the UPS truck. To the effect that:

> These statements show nothing more than that the mystery car entered the interstate in an erratic manner, . . . that it was operated alongside of the tractor-trailer for an unknown distance at an unknown speed on an icy road, and that Lane lost control of the tractor-trailer when he attempted to turn to his right or his left, depending on which of his statements is to be accepted. The record is silent regarding visibility, speeds or distances. In view of these deficiencies, any conclusion that the driver of the mystery car failed to keep a careful lookout or that such failure caused or contributed to cause Lane to lose control of his vehicle could only arise from the "nebulous twilight of speculation, conjecture and surmise."

Bell, 724 S.W. 2d at 685 quoting Shelton v. Bruner, 449 S.W.2d 673, 680 (Mo.Ct.App. 1969).

In the instant case, viewed in a light most favorable to plaintiffs, the testimony was that a white "phantom car" or "mystery car" entered the interstate suddenly; a red truck swerved slightly into the lane occupied by the Mackie tractor-trailer to avoid hitting or being hit by the white "phantom" car; the Mackie tractor-trailer moved over to his left and into the lane occupied by plaintiff John Burroughs; and the tractor-trailer and plaintiff John Burroughs' tanker came into contact. Although plaintiffs' evidence is lacking concerning speeds and distances, when ruling on a motion for JAML, the court must give the plaintiffs the benefit of all reasonable inferences. A reasonable inference is one which can be drawn from the evidence without resorting to speculation. Fought v. Hayes Wheels Int'l., Inc., 101 F.3d 1275, 1277 (8th Cir. 1996). "When the record contains no proof beyond speculation to support the verdict, judgment as a matter of law is appropriate." Id. However, from the evidence adduced the court can reasonably infer that the driver of the white "phantom" car caused the chain reaction that resulted in the accident. The reasonable inference is that the driver of the white "phantom" car failed to keep a careful lookout and that such failure was the proximate cause of the accident.

**III.    AMCO's Alternative Motion for New Trial [Doc. 167, 168]
        Plaintiffs opposed the Alternative Motion [Doc. 182]
        AMCO replied [Doc. 190]**

Pursuant to Fed.R.Civ.P. 50(b), if a party files a renewed motion for judgment as a matter of law, the party may also include an alternative motion for a new trial under Rule 59.

      **A.    Applicable Law**

Federal Rule of Civil Procedure 59 "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict. Gray v. Bicknell, 86 F.3d 1472, 1480 (8th Cir. 1996). "The authority to grant a new trial. . .is confided almost entirely to the exercise of discretion on the part of the trial court." Sanford v. Crittenden Memorial Hospital, 141 F.3d 882, 884 (8th Cir. 1998), (quoting Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)).

The standard upon which this court must consider AMCO's Rule 59 Motion for a New Trial differs from that which the court applied to AMCO's Motion for Judgment as a Matter of Law. A motion for new trial should only be granted if "the jury verdict were [sic] against the great weight of the evidence so as to constitute a miscarriage of justice." Denesha v. Farmer's Ins. Exchange, 161 F.3d 491, 497 (8th Cir. 1998) (quoting Pulla v. AMOCO Oil Co., 72 F.3d 684, 656 (8th Cir. 1959); Harris v. Secretary of the Army, 119 F.3d 1313, 1318 (8th Cir. 1997); Gray, 86 F.3d at 1480 ("[a] new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial resulted in a miscarriage of justice.").

B.    Discussion

1.    AMCO first argues it is entitled to a new trial because the evidence presented at trial did not support the submission of Instruction No. 8 to the jury over AMCO's objection.

Instruction No. 8 read:

Your verdict must be for plaintiff John Burroughs if you believe:

First, the operator of an uninsured motor vehicle failed to keep a careful lookout, and

Second, the operator of said vehicle was thereby negligent, and

Third, as a result of such negligence plaintiff John Burroughs sustained damage.

Doc. 148.  The jury should receive instructions on issues supported by competent evidence in the record.  Brown v. Sandals Resorts International, 284 F.3d 949, 953 (8th Cir. 2002). The court must give an instruction reflecting a party's theory of the case "if the instruction is legally correct and there is evidence to support it."  Oriental Trading Co., Inc. v. Firetti, 236 F.3d 938, 947 (8th Cir. 2001) (quoting Essco Geo. Metric v. Harvard Indus., 46 F3d 718, 727 (8th Cir. 1975)).  Instruction No. 8 is legally correct in that it is based on a Missouri Approved Instruction.  See MAI 31.11.  AMCO's arguments that plaintiffs failed to make a submissible case on the only theory of negligence submitted by plaintiffs (failure to keep a careful lookout) are set out in its Motion and Reply dealing with Judgment as a Matter of Law.  Docs. 167, 168 and 190. AMCO argues that the instruction was not supported by the evidence and that it was prejudiced by the reading of the instruction.

For the reasons set out above finding AMCO is not entitled to JAML, the court finds that AMCO is not entitled to a new trial because the jury verdict was not against the great

weight of the evidence and did not constitute a miscarriage of justice. The Alternative Motion for New Trial on this ground will be denied.

2.     AMCO's second ground for moving for a new trial is that it was prejudiced by the persistent misconduct of plaintiffs' counsel during the rebuttal portion of his closing argument. AMCO argues a new trial should be granted where the improper conduct of counsel in closing argument is plainly unwarranted and clearly injurious, <u>citing Griffin v. Hilke</u>, 804 F.2d 1052, 1057 (8th Cir. 1986).

At the Pretrial Conference the court indicated that it would likely grant AMCO's Motion in Limine seeking to prevent plaintiffs from making any argument as to the vexatious refusal of AMCO to pay. Based on this, plaintiffs' counsel informed the court that he would abandon his claims of vexatious refusal against both AMCO and Zurich.

There was no evidence adduced at trial about any conduct or wrongdoing on the part of the insurance defendants. During the first half of his closing argument, plaintiffs' counsel discussed the negligence of the phantom driver and the damages sustained by plaintiffs, without naming a dollar amount claimed.[4]

Counsel for AMCO and Zurich made their closing arguments. In plaintiffs' counsel's rebuttal, the following occurred:

Mr. Joshua Myers: But Ms. Rohan, she didn't see what she said she saw. I think that's hogwash. And you know what, it really does get me fired up. For these insurance companies, this isn't just someone else who's fighting for

_____

[4]     Under Missouri Law, a plaintiff is prohibited from "arguing a dollar amount in the final portion of closing argument (absent reference in the initial phase and/or comment relative thereto by defense counsel) on the basis of fairness to both parties." <u>Hart v. Forbes</u>, 633 S.W.2d 90, 95 (Mo.Ct.App. 1982); <u>Goldstein v. Fendelman</u>, 336 S.W. 2d 661, 667 (Mo. 1960). For many years this has not been a matter of discretion. <u>Tune v. Synergy Gas Corp.</u>, 883 S. W. 2d 10, 19 (Mo. banc 1994). The court granted plaintiffs' attorney leave to re-open the first half of his closing argument to state the dollar amount he was seeking.

their own sake. These are companies that took money, took money from these folks for protection that they thought was bought and paid for. And they had no problems taking that money and making a profit. They said yeah, give me that premium payments [sic] but you know what, when it comes time to paying that money out, maybe we don't have someone here because that person is still back at a desk saying denied.

Mr. Cooney: Your Honor, I have to object to this. This is outside the scope of the evidence. There is a representative of the insurance company that's been here the entire trial and I take exception to this.

The Court: Sustained.

Mr. Donelson: And I'll join.

Mr. Joshua Myers: The point is, folks, there's a debt to be paid here today. And if you think this insurance company is doing nothing more than trying to get around their obligations that were bought and paid for - -

Mr. Cooney: Your Honor, again, I have to object. That's not in the instructions. This is improper argument.

The Court: Join? Sustained.

Mr. Joshua Meyers: I'm going to leave you with this. I ask you for $500,000. You hold them to their obligations. If you believe what we proved to you, if you believe Ms. Rohan saw what she says she saw, then you come back with a verdict no less than that amount. Send these folks home for once three and a half years after this wreck, send them home finally with what they thought was paid for and bought, that protection. Thank you.

Transcript, Doc. 161, p.44, line 8-p.145, line 14.

The court finds that plaintiffs' counsel's arguments were improper. As noted above there was no evidence adduced about wrongful or improper conduct of the insurance company defendants and the arguments were clearly beyond the scope of the evidence. The arguments were made during rebuttal giving AMCO's and Zurich's counsel no opportunity to respond. Plaintiffs' counsel persisted in his improper argument despite two sustained objections. Plaintiffs' counsel's explanations for his behavior are not well-taken. Response, Doc. 182 at 18-20.

AMCO cites <u>Morrissey v. Welsh</u>, 821 F.2d 1294 (8th Cir. 1987) to support its request for a new trial. In <u>Morrissey</u>, counsel made numerous, repeated improper comments. The court noted "viewed in isolation, the individual statements by counsel may not have been so prejudicial as to deny defendants a fair trial, but taken as a whole, we believe that the cumulative effects of the numerous improper and inflammatory remarks made by plaintiffs' counsel were prejudicial." <u>Id.</u> at 1304. In the present case, plaintiffs' counsel made two improper remarks about the alleged misconduct of the insurance defendants. Although the comments were clearly designed to poison the jury against big, evil insurance companies that are reluctant to pay their obligations, the court cannot say that they rise to the <u>Morrissey</u> level. The Alternative Motion for New Trial on this ground will be denied.

IV.     **Plaintiffs' Motion to Alter or Amend Judgment. [Doc. 176, 177] AMCO opposed the Motion. [Doc. 181]**

    A.     **Applicable Law**

        Under Rule 59 of the Federal Rules of Civil Procedure, a party may make a motion to alter or amend the judgment "to correct manifest errors of law or fact or to present newly discovered evidence." <u>United States v. Metro. St. Louis Sewer Dist.</u>, 440 F.3d 930, 933 (8th Cir. 2006)

    B.     **Discussion**

        After trial and the submission of post-trial briefs, the court entered Judgment and issued a Memorandum Opinion, Doc. 163. The court ruled that plaintiffs were only entitled to stack their Uninsured Motorist Coverage provided by AMCO at the statutory minimum of $25,000 per insured automobile, of which there were three. The court ruled that this coverage could be stacked with the $25,000 of Uninsured Motorist Coverage provided by Zurich for a total of $100,000. In addition, the court ruled that AMCO and

Zurich were entitled to a set-off, or credit, of $295,000 for the settlement plaintiff John Burroughs obtained from defendant Mackie prior to trial.

On the stacking issue, plaintiffs made the same arguments they made in their response in opposition to AMCO's brief regarding policy issues. Doc. 155. The court has stated its position and incorporates by reference as if fully set out herein the reasoning in its Memorandum Opinion. Doc. 163.

On the set-off issue, plaintiffs first argue that AMCO failed to file a formal amendment to its pleadings setting forth the credit as an affirmative defense. The record reflects that both defendants made an oral amendment to the pleadings. Fed.R.Civ.P. 15(b)(2) states:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move - - at any time, even after judgment - - to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Fed.R.Civ.P. 15(b)(2). The court finds that the issue of the set-off as an affirmative defense was tried by the parties' consent, either express or implied, and plaintiffs' argument is without merit.

Plaintiffs' second argument is that AMCO failed to prove that plaintiff John Burroughs settled with Mackie for $295,000. Evidence of the settlement or amount of the settlement was not in contention at the trial. Plaintiffs' counsel stated in open court that plaintiff John Burroughs settled his case with Mackie for $295,000. This was a judicial admission and was the equivalent of evidence. The court has sufficient evidence onto which to base its decision that plaintiff John Burroughs settled with Mackie and that AMCO was entitled to a set-off for that amount.

Third, plaintiffs argue that AMCO had no legal basis on which a set-off could be granted. To the extent this argument is based on matters previously raised in their post-trial brief, the court again incorporates by reference the reasoning in its Memorandum Opinion, Doc. 163. To the extent plaintiffs are claiming that Mackie was not a joint tortfeasor because it was the only tortfeasor, the court finds that the whole thrust of plaintiffs' case was that the driver of the white "phantom" car was negligent. As AMCO points out, negligence is a tort and one who commits a tort is a tortfeasor (Doc. 181 at p. 4). AMCO directs the court's attention to a very recent case from the Missouri Court of Appeals which resolves this issue. In <u>Bryan v. Peppers</u>, 323 S.W. 3d 70 (Mo. Ct. App. 2010), the court said:

> UM cases combine tort and contract liability. The uninsured motorist's liability for money damages is determined under tort rules, while that of the insurer is governed by contract. [citation omitted.] State Farm may be contractually bound to pay damages that Bryan could legally recover from the lead driver but Bryan extinguished that liability by collecting full damages from Peppers.

<u>Id.</u> at 74. Fn 2

In the present case AMCO's contract liability is determined by the tort liability of the driver of the white "phantom" car. This driver is a joint tortfeasor with Mackie and is entitled to the benefit of the credit set out in R.S.Mo. § 357.060. The tort liability of the driver of the white "phantom" car is reduced by the $295,000 settlement with the joint tortfeasor, Mackie. AMCO's contractual liability, subject to the terms and limits of the policy, is determined by the tort liability of the driver of the white "phantom" car, that is, the uninsured motor vehicle. Plaintiff John Burroughs is only entitled to recover $165,000 from the driver of the uninsured motor vehicle. ($460,000 jury award minus $295,000 settlement). <u>See</u>, <u>Id.</u>

Finally, plaintiffs claim that there is no policy provision to support a credit for the settlement. To the extent R.S.Mo. § 537.060 obviates the need for a contract provision, the argument is without merit. However, as AMCO points out, the Insuring Agreement states that "AMCO will pay damages that the plaintiffs would legally be entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury." As stated above, plaintiff John Burroughs can only legally recover $165,000 from the driver of the uninsured motor vehicle. Plaintiffs' argument is not well taken.

Plaintiffs' Motion to Alter or Amend Judgment will be denied.

**V.     AMCO's Motion to Alter or Amend the Judgment [Doc. 169]**
**Plaintiffs opposed the Motion [Doc. 183]**
**AMCO replied [Doc. 191]**

**A.     Applicable Law**

The law governing such motions to alter or amend is set out above in section IV., A.

**B.     Discussion**

In its Memorandum Opinion (Doc. 163) the court found that paragraph A.1. of the Limit of Liability provision of the AMCO policy was ambiguous and awarded Rose Burroughs $40,000. The court found that the $40,000 awarded to Rose Burroughs was subject to a separate per person limit from the limit for the injuries to John Burroughs. However, this issue was conceded by the plaintiffs in their Surreply to AMCO's brief regarding policy issues. The plaintiffs, after careful consideration of defendant AMCO's policy language and Missouri cases interpreting the issue, did not take any issue with AMCO's contention that there was no separate limit for the consortium claim. Doc. 160, p. 4.

The court agrees that a court should not create an ambiguity where none exists and the fact that the parties disagree over the policy's interpretation does not render the term ambiguous. Lang v. Nationwide Mutual Fire Ins. Co., 970 S.W. 2d 828, 830 (Mo. Ct. App. 1998). The court finds that the award of $40,000 to plaintiff Rose Burroughs on her consortium claim was improper based on the plaintiffs' concession that the policy provision was clear and unambiguous, Doc. 160, p. 4.

AMCO's Motion to Alter or Amend the Judgment will be granted and the award of $40,000 to plaintiff Rose Burroughs will be vacated. The Judgment will be amended to award no recovery to plaintiff Rose Burroughs in that the policy limits are exhausted as a result of the damages awarded to plaintiff John Burroughs.

**VI.    Plaintiffs' Bill of Costs [Doc. 165]**
**Zurich objected [Doc. 179]**
**AMCO objected [Doc. 180]**
**Plaintiffs replied to Zurich [Doc. 188]**
**Plaintiffs replied to AMCO [Doc. 189]**

**A.    Applicable Law**

Recovery of Costs in the district court is generally governed by statute and the Federal Rules of Civil Procedure. See 28 U.S.C. § 1920; Fed.R.Civ.P. 54(d). Section 1920 defines "expenses that a federal court may tax as a cost under the discretionary authority found in [r]ule 54(d)." Crawford Fitting Co. [v. J. T. Gibbons, Inc.], 107 S.Ct. [2494] at 2479 [(1987)]. Thus, not all expenses of litigation are costs taxable against the losing party, and within the statutory framework of costs eligible to be taxed, the district court has discretion in determining and awarding costs in a given case.

Pershern v. Fiatallis North America, Inc., 834 F.2d 136, 140 (8th Cir. 1987).

Rule 54(d) of the Federal Rules of Civil Procedure states:

(1) Costs other than attorney's fees. Unless a federal statute, these rules, or a court order provides otherwise, costs - - other than attorney's fees - - should be allowed to the prevailing party.

**28 U.S.C. § 1920 states:**[5]

A judge or clerk of any court of the United States may tax as costs the following:

(1)     Fees of the Clerk and Marshal;

(2)     Fees for printed or electronically stored transcripts necessarily obtained for use in the case;

(3)     Fees and disbursements for printing and witnesses;

(4)     Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)     Docket fees under section 1923 of this title;

(6)     Compensation of court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under   section 1828 of this title.

A Bill of Costs shall be filed in the case and, upon allowance, included in the judgment or decree.

It is well established that Rule 54 creates a presumption that the court will award costs to the prevailing party. <u>Cantrell v. Int'l. Brotherhood of Electrical Workers</u>, 69 F.3d 456, 459 (10th Cir. 1995) (the burden is on the non-prevailing party to overcome the presumption.) <u>Id.</u>  Although the court has broad discretion in awarding costs, <u>Hiegel v. Hill</u>, 771 F.2d 358, 359 (8th Cir. 1985), this discretion "should be sparingly exercised with reference to expenses not specifically allowed by statute." <u>Farmer v. Arabian American Oil Co.</u>, 379 U.S. 227, 235 (1964).

B.     Discussion

---

[5]     The language of §1920 is not exactly the same as the categories on the "costs form" required by the court and Local Rule 8.03.  The content and meaning of the categories are the same.  In this Memorandum Opinion, the categories as set out on the court's form will be used because that is the way plaintiffs submitted their requests.

Plaintiffs timely submitted a Bill of Costs (Doc. 165) on the form required by the court. It enumerates the categories requested which, as noted in footnote 5, has slightly different verbiage than §1920.

1.     <u>Fees of the Clerk</u>

Plaintiffs' request for $350 for filing fees is unopposed and will be allowed.

2.     <u>Fees for Service of Summons and Subpoenas (if service by U.S. Marshal)</u>

Plaintiffs' request for $295 for service of summons and subpoena was withdrawn by plaintiffs. Therefore, the service fees of the Cole County Sheriff's Office, the Dallas County Sheriff's Office and the private process server will be disallowed.

3.     <u>Fees of the Court Reporter for All or Any Part of the Transcript Necessarily Obtained for Use in the Case</u>

Plaintiffs request $5,678.05 in this category:

| (a) James Coyle | 4/13/10 | $440.00 |
|---|---|---|
| | 2/3/09 | $433.50 |
| | 11/25/08 | $83.89 |

Dr. Coyle was deposed three times. Only the last, a video deposition, was used at trial. Objections to the cost of both the video and transcript are not well taken. In this district "the cost of both transcript and video deposition are taxable. <u>St. Francis Med-Center v. C. R. Bard, Inc.</u>, 2010 WL 1980328(E.C.Mo.), <u>citing</u> <u>Craftsman Limousine, Inc. v. Ford Motor Co.</u>, 579 F.3d 894, 897-98 (8th Cir. 2009); <u>Avante Int'l. Tech. Corp. v. Premier Elec. Solutions</u>, 2009 WL 3259613 at *3 (E.D. Mo.) ; <u>Advanced Software Design Corp. v. Fiserv, Inc.</u>, 2009 WL 3429584 at *1 (E.D. Mo.).

As to the other two depositions, the court finds that, even though not actually used at trial, these depositions were necessary for the trial and were not for discovery and/or investigative purposes. A deposition not used at trial can still be taxed so long as it was

taken for use at trial and not merely for discovery purposes.  See <u>Hollenbeck v. Falstaff</u>

<u>Brewing Corp.</u>, 605 F.Supp. at 421, 439 (E.D. Mo. 1985).

> The court has broad discretion to tax costs of depositions which are
> reasonably necessary to the case and not purely investigative in nature.
> <u>Koppinger v. Cullen-Schiltz & Assoc.</u>, 513 F.2d 901, 911 (8th Cir. 1975).
> Unless the opposing party interposes a specific objection that a deposition
> was improperly taken or unduly prolonged, deposition costs will be taxed as
> having been "necessarily obtained for use in the case" within the meaning of
> 28 U.S.C. § 1920.  <u>Federal Sav. & Loan, Ins. Corp. v. Szarabajka</u>, 330 F.Supp.
> 1202, 1210 (N.D. Ill. 1971).

<u>Meder v. Everest & Jennings, Inc.</u>, 553 F.Supp. 149, 150 (E.D. Mo. 1982).  <u>See</u> <u>also</u>

<u>Slagenweit v. Slagenweit</u>, 63 F.3d 719, 721 (8th Cir. 1995) (where deposition not introduced

at trial, opposing party must show deposition is purely investigative to preclude taxing as

costs).  <u>See</u> <u>also</u> <u>Emmenegger v. Bull Moose Tube Co.</u>, 33 F.Supp. 2d 1127, 1134 (E.D. Mo.

1998).  The costs of the depositions for Dr. Coyle will be allowed.  However, the

shipping/messenger service will be disallowed as not falling within any category set out in

28 U.S.C. § 1920.

(b)     **Leroy Grossman**            4/19/10     $267.90
                                                 10/16/08     $69.57

The court granted defendants' Motion in Limine to exclude Dr. Grossman's

testimony.  The fact that the court granted the Motion does not mean the depositions were

not "necessarily obtained for use in the case."  Plaintiffs certainly intended to use Dr.

Grossman's testimony on the issue of reducing plaintiff John Burroughs' future wage loss

to present value.  The depositions were therefore not purely investigative in nature, <u>see</u>

<u>Koppinger</u>, 513 F.2d at 911; <u>Slagenweit</u>, 63 F.3d at 721.  The cost of these depositions will

be allowed.  The shipping costs will be disallowed.

(c)     **John Burroughs**            4/26/10     $306.15

This request is unopposed and will be allowed.

(d)     **Eric Kessler, Lois Rohan and Robert Donovan   $329.60**

These deposition costs will be allowed.  The delivery and handling fee will be disallowed.

(e)     **William Hampton          11/25/08      $138.24**

This witness was plaintiffs' accident reconstructionist.  He was ultimately not called at trial because he placed blame for the accident on the Mackie driver and plaintiffs settled with Mackie prior to trial.  However, the court cannot say that his testimony was purely investigative.  It was necessary for use at trial even though not used.  <u>Koppinger</u>, 513 F.2d at 911.  This deposition cost will be allowed.  The delivery and handling cost will be disallowed.

(f)     **Matt MacKay                9/3/08        $1,225.61**

Plaintiffs deposed Matt MacKay, an employee of Mackie, on the issues of Mackie's negligent hiring and retention of its driver, Mr. Currie, as well as Mr. Currie's logs, gas cards, tracking data, etc.  Plaintiffs' negligent hiring and retention claim was subsequently abandoned.  It is difficult to understand why this deposition was not purely investigative in nature.  The deposition cost and the handling fee will be disallowed.

(g)     **Joseph Currie               9/4/09       $1,001.96**

This deposition cost will be allowed.  Defendants object to the handling fee and it will be disallowed.

(h)     **Derek Varley          9/3/08        $373.92**

For the reasons that apply to Matt MacKay, the deposition and handling fee for Mr. Varley will be disallowed.

(i)     **John and Rose Burroughs  6/2/08        $213.61**

Defendants again object that these depositions were taken before they were parties to the case. Defendants raise this objection to many of the depositions and while the court has not addressed this objection every time, the court finds that the defendants cite no authority for their position. Nothing in Rule 54(d) or 28 U.S.C. § 1920 limits recovery of costs incurred after a party's joinder. "When an expense is taxable as a cost. . . there is a strong presumption that a prevailing party shall recover it 'in full measure.'" <u>Concord Boat Corp. v. Brunswick Corp.</u>, 309 F.3d 494, 498 (8th Cir. 2002). The cost of the depositions of John and Rose Burroughs will be allowed. The handling fee will be disallowed.

(j) **Robert Smith**            7/20/08      $171.91

For the reasons that apply to Matt MacKay and Derek Varley, above, the deposition and handling fee for Mr. Smith will be disallowed.

(k) **Susan Moran**                        $171.90

The cost of the transcript of the closing arguments is unopposed by AMCO. Zurich opposes on the ground it did not file post-trial motions. As to Zurich's argument, the Eighth Circuit holds costs are not to be imposed separately and individually against certain parties. <u>Concord Boat Corp.</u>, 309 F.3d at 497. The parties are to be held jointly and severally liable for costs in a case. <u>Id.</u> The cost of the transcript will be allowed.

    4.    <u>Fees and Disbursements for Printing</u>

        a.    **IKON**

| IKON | 5/8/09 | $393.51 |
| IKON | 9/4/08 | $62.29 |
| IKON | 7/7/08 | $37.02 |
| IKON | 4/24/08 | $32.85 |

Plaintiffs withdraw their request for these items. They will be disallowed.

        b.    **FEDEX**

| FEDEX | 7/28/10 | $61.28 |

Plaintiffs claim this expense for "clean and crisp" copies of defendant John Burroughs' medical records which were offered during the trial. The court finds they were necessarily obtained for use in the case. This expense will be allowed.

### 5.      Fees for Witnesses

AMCO generally objects to the fees for witnesses because the addresses were not provided and thus calculation of mileage cannot be accurately determined. Plaintiffs respond that AMCO is more than aware of the addresses of all the witnesses from the information in the case.

(a)      Lois Rohan: plaintiffs amended their claim to $78.00

(b)      Robert Donovan: plaintiffs amended their claim to $62.80

(c)      Eric Kessler: plaintiffs amended their claim to $68.70

(d)      Terry Cordray: AMCO does not object to the $418.40 fee.

The witness fees as reduced by plaintiffs and/or unopposed by AMCO will be allowed.

### 6.      Fees for Exemplification and Copies of Papers Necessarily Obtained for Use in the Case

Plaintiffs requested $2,268.27 for copying charges. Both AMCO and Zurich object generally that plaintiffs have not provided sufficient detailed information for the defendants to determine whether the copies were necessarily obtained for use in the case. Specifically they object to $72.90 for Department of Transportation records on the grounds that these records, in the context of the case, were for plaintiffs' claims against Mackie. These claims were eventually settled or abandoned and had no relevance to the case as tried. The court finds these records were purely investigational and $72.90 will be disallowed. The rest of the records are various medical records. Plaintiffs admit they mistakenly listed a Professional Imaging charge of $29.31 twice and a $23.91 charge from Dr. Coyle's office

twice. The total costs for the medical records and bills should be reduced by $53.22 ($29.31 plus $23.91). The defendants now claim $2,142.15 for their costs in obtaining medical records and bills.

In a claim for personal injuries as was this case, charges for obtaining medical records and medical billing statements are relevant and taxable even if the records are not introduced as evidence at trial. See Taylor v. Bullock, 2009 WL 3432989 at *2 (E.D. Mo.). The medical records and bills will be allowed. The $53.22 duplicative charges will be disallowed.

## CONCLUSION

The court finds that $6,553.18 should be taxed as costs.[6]

Accordingly,

**IT IS HEREBY ORDERED** that AMCO's Renewed Motion for Judgment as a Matter of Law is **DENIED**. [Docs. 167, 168]

**IT IS FURTHER ORDERED** that AMCO's Alternative Motion for New Trial is **DENIED**. [Docs. 167, 168]

**IT IS FURTHER ORDERED** that plaintiffs' Motion to Alter Judgment is **DENIED**. [Doc. 176, 177]

**IT IS FURTHER ORDERED** that AMCO's Motion to Alter Judgment is **GRANTED**. [Doc. 169]

**IT IS FURTHER ORDERED** that plaintiffs' Motion for Bill of Costs is **GRANTED** in part and **DENIED** in part as more fully set out herein. [Doc. 165]

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this __17th__ day of February, 2011.

---

[6]     Exhibit 1 recaps the court's ruling on costs.